**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**
**CIVIL ACTION NO. 3:25CV-P355-JHM**

**GARY RIGHTNOWAR** **PLAINTIFF**

**v.**

**LOUISVILLE METRO GOVERNMENT/LOUISVILLE METRO DEPARTMENT OF CORRECTIONS** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Gary Rightnowar filed the instant *pro se* action proceeding *in forma pauperis*. The Court conducted an initial review of the complaint pursuant to 28 U.S.C. § 1915(e) and dismissed the action without prejudice and with leave to amend for Plaintiff to identify the specific individuals who he alleges violated his constitutional rights and to describe the actions taken by each. Plaintiff then filed an amended complaint (DN 12). The Court reopened the action and undertook an initial review of the amended complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In the amended complaint, Plaintiff sued seven John Doe corrections officers at Louisville Metro Department of Corrections (LMDC) and four Jane Doe nurses at LMDC in their individual capacities. Upon initial review of the amended complaint, the Court allowed Plaintiff's claims for excessive force and deliberate indifference to his serious medical needs to proceed against the John Doe corrections officers and Jane Doe nurses (DN 14). The Court directed the Clerk of Court to add LMDC Director Jerry Collins as a Defendant in the docket sheet for the limited purpose of engaging in discovery regarding the names of the John and Jane Doe Defendants. The Court ordered that Plaintiff had until February 12, 2026, to move to amend his complaint to identify the

names of the John and Jane Does. The Court ultimately extended that deadline to July 31, 2026 (DNs 21 and 27).

Plaintiff filed a second amended complaint on July 31, 2026, providing the names of four LMDC corrections officers (DN 28). Defendants Louisville Metro Government and Collins filed a motion to strike the second amended complaint on grounds that Plaintiff did not file a motion to amend the complaint and arguing that the amendment is untimely (DN 29). Thereafter, Plaintiff filed a motion to amend (DN 30). Upon consideration,

**IT IS ORDERED** Defendants' motion to strike the second amended complaint (DN 29) is **DENIED** and Plaintiff's motion for leave to file a second amended complaint (DN 30) is **GRANTED**.

This matter is now before the Court for screening of the second amended complaint pursuant to 28 U.S.C. § 1915(e). For the reasons that follow, the Court will allow claims to proceed against the four named Defendants and dismiss all other claims.

## I. SUMMARY OF FACTUAL ALLEGATIONS

In the second amended complaint, Plaintiff lists the following Defendants: Louisville/Jefferson County Metro Government (Louisville Metro Government); LMDC corrections officers Benjamin Kalala, Jean Dumay, Brandon L. Hazel, and Nathaniel O. Stokes; and "Jane Doe and/or John Doe Medical Providers 1-5." He sues each person in their individual capacity only.

Plaintiff states that he was arrested and taken to LMDC on July 31, 2024. He reports that during the intake process he informed personnel that he suffered from numerous physical and mental health disorders, including "autism level one, schizo effective disorder, post traumatic stress disorder, major depression, anxiety of multiple types, [and] attention deficit disorder," for

which he was prescribed multiple medications. Plaintiff states that he "advised intake personnel that abruptly discontinuing his prescribed medications could cause serious physical and psychological problems." Plaintiff reports that he was placed in the detox unit even though he was not withdrawing from drugs or alcohol. He states that he was housed in the detox unit for eight days and during that time "repeatedly requested his prescribed medications from correctional officers and medical personnel." He represents that he only received Prozac once or twice and possibly one other medication on one or two occasions. He reports that his "physical and mental condition steadily deteriorated." He states that he was unable to eat, drink, or sleep, began having panic attacks, and believed that he would die because his medications were withheld. He further states as follows:

> Believing that he would not receive his medications and acting while suffering from severe mental and physical deterioration, Plaintiff ran toward a nearby exit in an attempt to leave the housing area. . . . Plaintiff reached the exit door but was unable to leave because the door was locked. . . . Defendants Benjamin Kalala and Jean Dumay pursued Plaintiff and physically restrained him. . . . According to the incident reports, Defendants Kalala and Dumay both participated in securing Plaintiff. The reports differ regarding each officer's specific actions. . . . Plaintiff recalls being forced against a wall, taken to the ground, and handcuffed. . . . While Plaintiff was being restrained, one of the officers forcefully pulled Plaintiff's right arm upward towards his head, behind his back while he was being handcuffed. . . . Plaintiff immediately experienced severe pain in his right shoulder. . . . Plaintiff believes this maneuver caused a serious injury to his right shoulder. . . . Because the officers' incident reports conflict regarding each officer's actions, Plaintiff cannot truthfully identify which officer applied the maneuver that injured his shoulder. . . . Plaintiff alleges that Defendants Benjamin Kalala and Jean Dumay were both directly involved in restraining him and are responsible for the force used during this incident to the extent permitted by the evidence.

Plaintiff reports that he was then placed in a holding cell for five to six hours. He states Defendant Hazel removed him from the holding cell. He states, "According to Defendant Hazel's incident report, Plaintiff pulled away from him and began running. . . . Plaintiff recalls being handcuffed and beginning to run out of fear, but remembers almost immediately stopping and

turning back toward the officers, because he remembered that running would do no good." He continues, "As Plaintiff turned back, Defendant Hazel deployed his TASER. . . . The TASER caused Plaintiff to fall violently onto the concrete floor. . . . Plaintiff struck his head on the concrete during the fall. . . . Plaintiff briefly lost consciousness." He states that another officer then placed him in handcuffs. He asserts, "Defendant Hazel's own incident report documents that Plaintiff complained of head pain after the fall. . . . Despite Plaintiff's head injury and loss of consciousness, he was not transported to a hospital or emergency department for evaluation."

Plaintiff reports that he was then moved to an "extremely cold" isolation cell where he was provided only a t-shirt and shorts and was not initially given a blanket, mattress pad, shoes, or socks. He states, "The combination of Plaintiff's untreated mental illness, medication deprivation, not eating, drinking, or sleeping, head injury, physical pain, isolation, and the conditions of the cell caused his mental condition to deteriorate even further." He represents that he "experienced thoughts of suicide while in the isolation cell. He reports that after several hours an unidentified medical provider came to his cell and asked "whether the lump on his head was sticking outward or inward." He states, "After Plaintiff answered that it was sticking outward, the medical provider responded, in substance, 'You should be okay,' and left without performing a meaningful physical examination or arranging for Plaintiff to receive emergency medical treatment." He states that he remained in isolation for two days without medical treatment for his head injury.

Plaintiff states that he was released from LMDC after approximately eleven days. After his release, he states that he experienced "continuing anxiety, depression, emotional distress, difficulty sleeping, and difficulty coping with what had occurred during his incarceration." He also states that he "continued to experience problems with memory, concentration, and thinking following the head injury he sustained after being tased and striking his head on the concrete." He

further asserts that he "continues to experience pain, weakness, and limitations in his right shoulder resulting from the injury sustained while he was being restrained during the first use-of-force incident." As relief, he seeks compensatory damages.

## II. STANDARD

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, the Court must dismiss a case at any time if it determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B). Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted). And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When determining whether a plaintiff has stated a claim upon which relief can be

granted, the Court must construe the complaint in a light most favorable to Plaintiff and accept all of the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

## III. ANALYSIS

Section 1983 creates a cause of action against any person who, under color of state law, causes the deprivation of a right secured by the Constitution or the laws of the United States. A claim under § 1983 must therefore allege two elements: (1) the deprivation of federal statutory or constitutional rights by (2) a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001). Absent either element, no § 1983 claim exists. *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### *A. Defendant Louisville Metro Government*

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal or county policy or custom and the alleged constitutional deprivation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of*

*Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Moreover, "a municipality cannot be held liable *solely* because it employs a tortfeasor — or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell*, 436 U.S. at 691 (emphasis in original); *Searcy*, 38 F.3d at 286; *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in *Pembaur*).

Plaintiff does not allege that any action was taken pursuant to a municipal policy or custom of Louisville Metro Government. Plaintiff alleges isolated occurrences affecting only him. Therefore, Plaintiff's § 1983 claims against Louisville Metro Government must be dismissed for failure to state a claim upon which relief may be granted.

***B. Defendant Stokes***

Plaintiff lists Defendant Stokes in the caption and in the "Parties" section of the second amended complaint. However, he makes no reference to Defendant Stokes in the body of the second amended complaint nor does he make any allegation of any specific action undertaken by him. Where a person is named as a defendant without an allegation of specific conduct, the claim against the defendant is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of plaintiff's claims for failure to state a claim upon which relief may be granted where the complaint did not allege with any degree of specificity which of the named defendants were

personally involved in or responsible for each alleged violation of rights); *George v. Gordon*, No. 2:22-CV-1981, 2022 U.S. Dist. LEXIS 101205, at *8 (S.D. Ohio June 6, 2022), *report and recommendation adopted*, 2022 U.S. Dist. LEXIS 120459 (S.D. Ohio July 6, 2022) ("[T]he Court cannot draw the reasonable inference that any of these Defendants are liable for the misconduct alleged, because Plaintiff makes no factual assertions about any Defendant's conduct . . . . Even affording Plaintiff the leniency due to *pro se* complainants, the Court can do no more than guess at the nature of the claim asserted.") (citations omitted). Therefore, Plaintiff's claim against Defendant Stokes will be dismissed for failure to state a claim.

***C. Defendants Kalala, Dumay, and Hazel***

Construing the complaint broadly, as is required at this stage, the Court will allow Plaintiff's claims for excessive force in violation of the Fourteenth Amendment to proceed against Defendants Kalala, Dumay, and Hazel for further development. The Court will also allow Plaintiff's claim for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment to proceed against Defendant Hazel for further development. In allowing the claims to proceed, the Court passes no judgment on their merit or ultimate outcome.

***D. Conditions of isolation cell***

Plaintiff does not allege that any of the named Defendants was personally involved in placing him in the isolation cell. However, even if he had, the claim would be subject to dismissal. In the context of conditions of confinement, the Fourteenth Amendment's prohibition against cruel and unusual punishments requires prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Poynter by & through Fernandez v. Shirley*, No. 25-5188, __ F.4th __, 2026 U.S. App. LEXIS 27570, at *16-17 (6th Cir. Sept. 8, 2026) (instructing courts to apply *Farmer* to Fourteenth Amendment conditions-of-confinement claims

just as it has long been applied to Eighth Amendment conditions-of-confinement claims). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of a . . . violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (internal citation omitted) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

A conditions-of-confinement claim includes both an objective and a subjective component. *See Wilson*, 501 U.S. at 298. The objective component requires the plaintiff to demonstrate "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. The subjective component requires the plaintiff to demonstrate that a prison official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837; *see also Kroese v. Williamson Cnty., Tennessee*, No. 3:25-CV-01268, 2026 U.S. Dist. LEXIS 212212, at *13 (M.D. Tenn. Sept. 18, 2026) ("To state a viable conditions-of-confinement claim under the Eighth Amendment or Fourteenth Amendment, Plaintiff must allege facts from which the Court may reasonably infer that 'there [was] a substantial risk of serious harm the state knew about and disregarded.'") (quoting *Poynter*, 2026 U.S. App. LEXIS 27570, at *19).

Conditions-of-confinement claims "are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017). Certain conditions "may be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678 (1978). Here, the duration of Plaintiff's confinement in the isolation cell lasting only two days is not sufficient to meet the objective component of a Fourteenth Amendment claim. *See, e.g.*, *Watison v. Perry*, No. 23-5059, 2024 U.S. App. LEXIS 3674, at *6 (6th Cir. Feb. 15, 2024) (nine days in segregation in a cold cell with

no bedding or change in clothing not sufficient); *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (holding that allegations by inmate of denial of toilet paper, soap, running water, or the ability to shower for six days did not violate the Eighth Amendment); *Keltner v. Cook*, No. 3:16-CV-179-TA, 2017 U.S. Dist. LEXIS 87084, at *5-6 (E.D. Tenn. Dec. 11, 2024) (six-day period in a cell with stopped up toilets and no showers or clean clothes does not meet the objective component); *Moore v. Goulet*, No. 1:22-cv-279, 2023 U.S. Dist. LEXIS 165728, at *13-16 (W.D. Mich. Aug. 21, 2023) (multiple days in a cell with sewage and flooding issues with no access to cleaning supplies does not meet the objective component), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 164679 (W.D. Mich., Sept. 15, 2023).

Therefore, Plaintiff's claims based on the conditions in the isolation call will be dismissed for failure to state a claim.

***E. Jane and John Doe medical providers***

Plaintiff also lists "Jane Doe and/or John Doe Medical Providers 1-5" in the second amended complaint. He asserts, "Pursuant to the Court's Memorandum and Order, Plaintiff carefully reviewed the discovery produced by Defendants, including incident reports, medical records, and other documents, in an effort to identify the previously unknown John and Jane Doe Defendants." He continues, "Although the medical records identify numerous medical personnel, Plaintiff cannot in good faith determine which specific providers were personally responsible for refusing, withholding, delaying, discontinuing, or failing to provide his prescribed psychiatric medications immediately preceding the August 8 and August 9, 2024 incidents." He states that he "therefore has not substituted additional medical personnel as defendants without a factual basis."

As stated above, the Court ordered that LMDC Director Collins be added as Defendant to the action for the limited purpose of engaging in discovery regarding the names of the John and

Jane Doe Defendants. Defendant Collins produced numerous records to Plaintiff, including medical records, and the Court granted Plaintiff's motion to compel in part directing Defendant Collins to produce additional records (DN 27). The Court has given Plaintiff ample time to identify the Jane and John Doe medical providers by extending Plaintiff's deadline for identifying them twice (DNs 21 and 27). Because Plaintiff has failed to move to amend the complaint to identify the Jane and John Doe medical providers in the time allotted, these Defendants will be dismissed from the action for failure to state a claim.

## IV. CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that Plaintiff's claims against Defendants Louisville/Jefferson County Metro Government, Stokes, and the "Jane Doe and/or John Doe Medical Providers 1-5" and his claims regarding the conditions of the isolation cell are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(b)(ii) for failure to state a claim upon which relief may be granted.

The **Clerk of Court is DIRECTED** to terminate Defendants Louisville Metro Government, Louisville/Jefferson County Metro Government, Collins, Stokes, "John/Jane Doe Medical Providers 1-5," and all other John and Jane Defendants listed in the docket sheet since no claims remain against them.

The Court will enter a separate Service and Referral Order to govern the claims that have been permitted to proceed.

Date: November 3, 2026

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Defendants Kalala, Dumay, and Hazel
Counsel of record
4414.010